**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**JOESEPH TOWNSEND,**

        **Plaintiff,**

**v.**

**JOHN DOE 5,** *et al.*,

        **Defendants.**

**Case No. 24-cv-02318-SPM**

## <u>MEMORANDUM AND ORDER</u>

**MCGLYNN, District Judge:**

Plaintiff Joeseph Townsend, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, commenced this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights while he was at Shawnee Correctional Center (Shawnee). Plaintiff claims that on December 22, 2023, Shawnee correctional staff ignored his please for a crisis team and medical attention after he ingested a large quantity of medication and then subjected him to excessive force.

On July 17, 2025, Plaintiff filed an amended complaint, which was docketed as "Motion for Leave to File Amended Complaint." (Doc. 34). The following day, Plaintiff sought additional time to identify the John Doe Defendants because he was still waiting on John Doe discovery from Defendants. (Doc. 35). Defendants filed a response in opposition to the Motion for Leave to File Amended Complaint arguing that the Court should deny the Motion because the filing does not comply with the Court's Initial Scheduling and Discovery Order and Local Rule 15.1. (Doc. 28). Defendants point out that Plaintiff failed to provide an explanation for how the proposed amended complaint differed from the Complaint on file and did not underline new material. Plaintiff then filed a new Motion for Leave to File Amended Complaint attempting to cure these deficiencies.

Page 1 of 8

(Doc. 39).

Because Plaintiff filed a second Motion for Leave to File Amended Complaint (Doc. 39), the first Motion (Doc. 34) is **DENIED** as moot. The Court grants the Motion for Extension of Time (Doc. 35) and **DEEMS** the second Motion for Leave to File Amended Complaint timely filed. (Doc. 39).

As to the second Motion for Leave to File Amended Complaint, Plaintiff states that he is seeking to amend in order to identify the John Doe Defendants and add new defendants based upon documents he has received in discovery. (Doc. 39). Defendants do not oppose this second Motion. Leave to amend is to be freely given when justice requires, FED. R. CIV. P. 15(a)(2), and so, the Motion is **GRANTED**. The Clerk of the Court will be instructed to file the proposed amended complaint (Doc. 39-1) as the "First Amended Complaint." The First Amended Complaint, however, is still subject to review pursuant to 28 U.S.C. § 1915A.[1]

### ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

In the First Amended Complaint, Plaintiff alleges that on December 22, 2023, around 8:30 a.m., he began requesting "loudly and clearly" from his cell to meet with a crisis team member. (Doc. 39-1, p. 7). When his requests were ignored, Plaintiff ingested "27,900 mg of prescription pills." He took "23,400 mg of acetaminophen and 4,500 mg of naproxen." Plaintiff then slid the empty blister packs under his cell door. After taking the medicine, Plaintiff states that he panicked and sought medical aid "fervently." (*Id.*). Correctional Officers Zachary Johnson and Eric Young walked by Plaintiff's cell, and Plaintiff heard them joke about his pleas for medical assistance. (*Id.* at p. 7-8). Correctional Officer Austin Chandler also came by wheeling a trash can, and according to Plaintiff, Chandler could hear Plaintiff "scream[ing] about the pills [he] had taken]." (*Id.* at p.

---

[1] Pursuant to Section 1915A, any portion of the proposed amended complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

8). Chandler, however, did not notify any of his superiors about Plaintiff's overdose or take any action to assist Plaintiff. Chandler simply disposed of the empty blister packets that were on the ground outside of his cell. (*Id.*).

At some point, Plaintiff's food port door was opened, and Plaintiff stuck his arm through the door seeking medical attention. (Doc. 39-1, p. 8). Plaintiff asserts that Sergeant Andrew Miles was near the cell but walked away, "without saying a word." Lieutenant Levanti then came to the cell and asked Plaintiff what was wrong. According to Plaintiff, he explained that he had been denied access to a member of the crisis team and had ingested large quantities of medication. Plaintiff told Levanti that for over the pass hour he had been ignored by every passing "uniform." Levanti then left. (*Id.*).

By this point, Plaintiff states that he was severely dehydrated, and his blood pressure had skyrocketed. (Doc. 39-1, p. 8). His body became numb, and he had an anxiety attack and collapsed to the floor. Young came back to his cell and slammed the food port door closed, laughing as he did so. When Young saw Plaintiff on the floor, however, he went to inform other staff. Plaintiff asserts that Lieutenant Jacob Horn came to the cell and "called a Code 3." When Horn entered Plaintiff's cell, Plaintiff was on the floor hyperventilating and crying. Horn told Johnson, Young, and Miles that Plaintiff was faking a seizure. (*Id.*). Plaintiff was rolled over onto his stomach, and Horn directed Johnson and Young to "shackle" him. (*Id.* at p. 8-9). Even though Plaintiff was hyperventilating and fighting for air, Plaintiff asserts that Horn sat on his back, further obstructing his ability to breathe. (*Id.* at p. 9). While Plaintiff was being restrained, Chandler, Correctional Officer Colson, and Sergeant Charelton watched from the doorway. (*Id.*).

Sergeant Dubree arrived at Plaintiff's cell with medical personnel, and Horn repeated that he believed Plaintiff was faking a seizure. (Doc. 39-1, p. 9). Plaintiff believes the phrase "faking a seizure" is code for granting permission to mistreat him. (*Id.* at p. 8). Horn then stood up, grabbed

the handcuff chain, and "yanked it upwards," using the chain to haul Plaintiff off the floor. Plaintiff states that the handcuffs were too tight, and he lost all feeling in his hands. Plaintiff was then taken to the health care unit. (*Id.*).

At the health care unit, Plaintiff was placed in a "medical chair" and secured with a seatbelt. (Doc. 39-1, p. 9). While in the medical chair, Plaintiff states that he would lean forward to prevent the handcuffs from cutting into his wrists. Sergeant Dubree repeatedly pushed Plaintiff back against the chair back forcing him to sit upright, which resulted in the handcuffs further cutting his wrists. Young then grabbed Plaintiff's left hand and began to bend his left thumb backwards. Plaintiff informed the officers that the position that they were directing him to sit in was painful, and he would "not do it." (*Id.*). Correctional Officer Noland came to investigate the situation, and Plaintiff told Noland that sitting in an upright position was painful. (*Id.* at p. 10). Noland instructed Plaintiff that if he did not "sit back," then Noland would tighten the seatbelt. Plaintiff states that he a Noland argued. Johnson then grabbed Plaintiff's left hand and bent it back as far as possible. Johnson, Young, and Dubree talked openly about plans to physically assault Plaintiff, but they decided against it as there were too many nurses in the health care unit and there was a camera located outside the building. Lieutenant Banks was present during this entire exchange in the health care unit and did not reprimand the officers or otherwise intervene. (*Id.*).

Plaintiff was eventually taken to the hospital where it was confirmed that he had "toxic levels of acetaminophen in his system." (Doc. 39-1, p. 10).

**DISCUSSION**

Based on the allegations in the First Amended Complaint, the Court designates the following Counts:

> **Count 1:**    Eighth Amendment deliberate indifference claim against Johnson, Chandler, Young, Miles, and Levanti for ignoring Plaintiff's pleas

Page 4 of 8

for a crisis team and then medical attention on December 22, 2023, after he ingested a large quantity of medication.

**Count 2:**    Eighth Amendment claim against Horn, Johnson, Young, Miles, Chandler, Colson, and Charelton for the use of excessive force and/or failing to intervene when restraining Plaintiff in his cell on December 22, 2023.

**Count 3:**    Eighth Amendment claim against Dubree, Young, Johnson, and Banks for the use of excessive force and/or failing to intervene on December 22, 2023, in the health care unit.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### Count 1

A constitutional claim for the denial of medical care arises when a prison official responds to an inmate's serious medical condition, viewed from an objective standpoint, with deliberate indifference, when viewed from a subjective standpoint. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).

Plaintiff claims that he requested "a crisis team both loudly and clearly," and his requests were ignored. (Doc. 39-1, p. 7). This singular statement is not sufficient to state an Eighth Amendment claim against any of the Defendants. First, this assertion is not made against any individual Defendant. Second, there are no facts from which the Court can infer that the Defendants were aware that there was a substantial risk of danger or harm to Plaintiff and ignored such risk at the time of his request. *See Colins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006) ("a request to see a crisis counselor, standing alone, is not sufficient to put a defendant on notice that

---

[2] *See Bell Atlantic Crop. v. Twombly*, 550 U.S. 544, 570 (2007).

an inmate poses a substantial and imminent risk of" harm to himself). Accordingly, Count 1 is dismissed to the extent Plaintiff is claiming that his Eighth Amendment rights were violated when he was not provided with access to a member of the crisis team on December 22, 2023.

Count 1 will proceed against Johnson, Chandler, Young, Miles, and Levanti for failing to immediately obtain medical care for Plaintiff after he ingested large quantities of medicine and needed urgent attention.

**Counts 2 and 3**

Not every use of force against an inmate is unconstitutional. Only the "unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whiltey v. Albers,* 475 U.S. 312, 319 (1986) (internal quotations and citations omitted). Therefore, "[c]orrectional officers violate the Eighth Amendment when they use force maliciously and sadistically for the very purpose of causing harm, but not when they apply it in good faith to maintain or restore discipline." *Jackson v. Angus*, 808 F. App'x 378, 382 (7th Cir. 2020) (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). *See also See Sanchez v. City of Chi.,* 700 F.3d 919, 925-26 (7th Cir. 2012) (an officer can be liable for both for his own use of excessive force and his failure to take reasonable steps to stop the use of excessive force by fellow officers).

At this stage, Plaintiff has pled sufficient facts to support the inference that Horn, Johnson, Young, Miles, Chandler, Colson, and Charelton restrained him in his cell with the intent to cause harm and not in good faith, or otherwise failed to intervene and prevent such conduct, on December 22, 2023. Count 2 survives preliminary review.

As for the events in the health care unit, Plaintiff asserts Dubree, Young, Johnson, and Banks forced him to sit upright in the medical chair, causing cuts to his wrists. Plaintiff also states that Young bent his "thumb all the way back," and Johnson bent his left hand bent it back "as far as possible," all while Plaintiff was handcuffed, shackled, and belted to the medical chair. These

Page 6 of 8

allegations are also sufficient for Count 3 to proceed.

### MOTIONS FOR DEFAULT

Plaintiff has filed two motions asking the Clerk of Court to enter default against Defendants. (Doc. 40, 43). Plaintiff's motions are **DENIED.** Defendants' continuous filings, including answers to the Complaint, demonstrate that they have not failed to plead or otherwise defend the lawsuit, and so default judgment is not warranted. *See* FED. R. CIV. P. 55.

### MOTION TO WITHDRAW AFFIRMATIVE DEFENSE

Defendants Dubree, Levanti, Johnson, and Young have filed a motion to withdraw the affirmative defense of failure to exhaust administrative remedies. (Doc. 38). The Motion is **GRANTED**. The affirmative defense is **DEEMED WITHDRAWN**. The stay on merits discovery will remain stayed until the newly named Defendants have been served and filed answers to the First Amended Complaint.

### DISPOSITION

For the reasons stated above, the first Motion for Leave to File Amended Complaint is **DENIED as moot**. (Doc. 34). The Motion for Extension of Time is **GRANTED**, and the second Motion for Leave to File Amended Complaint is **DEEMED** timely filed and is **GRANTED**. (Docs. 35, 39). The Clerk of Court is **DIRECTED** to file the proposed amended complaint (Doc. 39-1) on the docket as the "First Amended Complaint."

The First Amended Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed in part against Johnson, Chandler, Young, Miles, and Levanti. **COUNT 2** shall proceed against Horn, Johnson, Young, Miles, Chandler, Colson, and Charelton. **COUNT 3** shall proceed against Dubree, Young, Johnson, and Banks. The Clerk of Court shall serve process on Horn, Banks, Miles, Charelton, Chandler, and Colson in accordance with the original Merit Review Order at Doc. 11.

All Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues as stated in this merit review order.**

Because there are no longer any John Doe Defendants in this case, Warden Darren Galloway is **DISMISSED**, and the Clerk shall **TERMINATE** him as a defendant.

The Motion to Withdraw Affirmative Defense filed by Defendants Dubree, Levanti, Johnson, and Young is **GRANTED**. (Doc. 38). The Motions for Default filed by Plaintiff are **DENIED**. (Doc. 40, 43).

**IT IS SO ORDERED.**

**DATED: March 26, 2026**

 _s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**